# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIO CASTILLO, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-04069-B-BK |
| | § | |
| CAROLYN W. COLVIN, | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The cause is now before the Court on Plaintiff's *Motion for Summary Judgment* (Doc. 15) and Defendant's cross-*Motion for Summary Judgment* (Doc. 17). For the reasons stated herein, it is recommended that Plaintiff's *Motion for Summary Judgment* be **DENIED**, Defendant's *Motion for Summary Judgment* be **GRANTED,** and the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND[1]

### A.      Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). On March 12, 2010, Plaintiff filed for SSI, claiming that he became disabled on that date due to diabetes, high blood pressure, and problems with his back, heart, and knees. (Tr. 135-38, 153). His application was denied at all administrative levels, and he now appeals to this Court pursuant to

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

42 U.S.C. § 405(g).  (Tr. 1, 10, 114, 121).

**B.**     **Factual Background**

At the time of his alleged onset of disability, Plaintiff was 49 years old with a tenth-grade

education and previous work experience as a custodian.  (Tr. 73, 76, 153-54).  He had last been

employed in March 2004, but quit when he became sick.  (Tr. 78).  In May 2010, Plaintiff went

to the emergency room complaining of chest pain and shortness of breath, and he was discharged

the next day.  It was noted that he had a past medical history of hypertension, hyperlipidemia

(high cholesterol)[2], and diabetes, and had been a cocaine abuser for many years.[3]  (Tr. 299).  A

chest x-ray showed that his heart was mildly enlarged.  (Tr. 323).  Later that month, Plaintiff was

briefly hospitalized for right eye pain and diagnosed with preseptal cellulitis (an infection

involving the superficial tissue layers anterior to the orbital septum)  (Tr. 291-92).  The following

month, Plaintiff's left eye swelled, and he was prescribed medication.  (Tr. 279-80).

In July 2010, Plaintiff underwent a consultative exam with Dr. Anuradha Tavarekere,

who noted that Plaintiff had experienced heart problems since 2002, which caused him fatigue,

shortness of breath, chest pain, and leg swelling.  (Tr. 325).  Dr. Tavarekere also stated that

Plaintiff was 5'5" tall, weighed 285 pounds and complained of constant headaches, tingling in

his hands, numbness in his legs, low back pain, and bilateral knee pain.  (Tr. 326).  In March

---

[2] All medical terms are defined by reference to *Stedman's Medical Dictionary* (27th ed. 2000) available on Westlaw.

[3] Although Plaintiff relies on many medical records in the administrative record that precede 2010, those records are not of particular relevance given Plaintiff's alleged disability onset date of March 2010.  *See* 20 C.F.R. 416.912(d) (providing that if the claimant states that his disability began less than 12 months before he filed his application, the Commissioner will develop his medical history beginning with the month the claimant says the disability began).

2011, Plaintiff was seen at the Deharo Saldivar Adult Clinic for his diabetes, hypertension, and hyperlipidemia. (Tr. 375-76). In July 2011, clinic staff noted that Plaintiff had anxiety disorder and hypertension. (Tr. 436-38). In September 2011, Plaintiff began receiving treating from Dr. Rajesh B. Vrushab for his cardiomyopathy (disease of the myocardium). (Tr. 456, 464). The following month, Dr. Vrushab also diagnosed Plaintiff with systolic chronic heart failure and benign hypertension. (Tr. 460-61).

## C.    Administrative Hearing

At Plaintiff's hearing, the ALJ asked a vocational expert ("VE") whether she would find jobs in the national economy for a 50-year-old male with an eleventh grade education with past work that was heavy and unskilled, who could presently (1) lift 15 pounds occasionally and ten pounds frequently; (2) sit for six hours, stand for four hours, and walk for two hours in a workday; (3) reach, finger, and feel continuously; (4) climb frequently; and (5) balance, stoop, kneel, and crawl occasionally. (Tr. 101-02). The VE responded that she could identify jobs for such an individual at the sedentary level and gave examples such as order clerk, final assembler, and addressor. (Tr. 102-03).

## D.    The ALJ's Findings

In September 2011, the ALJ found that Plaintiff had the severe impairments of osteoarthritis of the lumbar spine and knees bilaterally, obesity, coronary artery disease, congestive heart failure, essential hypertension, diabetes mellitus, and a history of substance abuse, but those impairments did not meet or equal one of the listed impairments. (Tr. 15). After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a modified range of light work to the extent he had identified at the

3

administrative hearing. (Tr. 16). In making these findings, the ALJ rejected some of the findings

of the state agency medical consultant, Robin Rosenstock, who found that Plaintiff could perform

a full range of light work. *Id.* The ALJ held that although Plaintiff could not perform his past

relevant work, he could perform other jobs in the national economy as the VE had stated. (Tr.

18).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C.

§ 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled: (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing her past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the

burden shifts to the Commissioner at step five to show that there is other gainful employment

available in the national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d

232, 236 (5th Cir. 1994).  This burden may be satisfied either by reference to the Medical-

Vocational Guidelines of the regulations or by expert vocational testimony or other similar

evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

## III.   ARGUMENT AND ANALYSIS

### *1.  Whether the ALJ applied the appropriate standard in determining which of Plaintiff's impairments was severe.*

Plaintiff first argues that the ALJ applied the wrong severity standard at step two of the

sequential analysis and, in doing so, did not find his anxiety, headaches, preseptal cellulitis,

gastroenteritis, eye pain, shortness of breath, hyperlipidemia, and arm numbness to be severe.

(Doc. 15-1 at 11-13).  Plaintiff points out that the ALJ did not consider the effect of these

impairments at later stages of the sequential analysis and thus the error is not harmless.  *Id.* at 13-

15; *see also* Doc. 19 at 1-5 (reply brief, reiterating arguments).

Defendant responds that, despite misquoting the severity standard in one portion of his opinion, the ALJ did ultimately apply the correct legal standard rendering any error harmless. (Doc. 17-1 at 11-13). Moreover, Defendant argues that the additional symptoms Plaintiff lists did not qualify as severe. *Id.* at 13-15.

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Therefore, the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. The *Stone* court also held that it would assume the ALJ applied the incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to *Stone* or a similar opinion, or by an express statement that the court's construction of section 404.1520(c) was used. *Id.* at 1106. The Court of Appeals for the Fifth Circuit recently held, however, that *Stone* error can be harmless even where the ALJ fails to identify the specific applicable legal standard or cite to *Stone*. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012).

Here, when setting out the law in his opinion, the ALJ made an incorrect statement of the law when he found that an impairment was severe if it "significantly limits an individual's ability

6

to perform basic work activities" and an impairment was not severe if it was "a slight abnormality . . . that would have no more than a minimal effect on an individual's ability to work." (Tr. 14, 15); *see Stone*, 752 F.2d at 1104-05. The ALJ also set out the correct standard as dictated by *Stone*. (Tr. 15). The ALJ thus created an ambiguity by citing to *Stone* as well as the incorrect standard of severity. Nevertheless, remand is not required if the error was harmless. *Taylor*, 706 F.3d at 603.

Plaintiff's anxiety was mentioned only a few times in his medical records, usually as part of his prior medical history. (Tr. 272, 391, 438). Otherwise, Plaintiff's psychiatric history is noted to be normal and negative for depression, so the Court does not find his anxiety to be severe. (Tr. 326, 374, 457, 460, 464, 467). Next, although Plaintiff complained that his headaches were constant (Tr. 326), he took only ibuprofen for them. (Tr. 86-87). The test for disability is not satisfied merely because a claimant cannot work without some pain or discomfort. One does not have to be "pain free" in order to work. *See Chaney v. Califano*, 588 F.2d 958, 960 (5th Cir. 1979). Here, Plaintiff cannot show that he was so functionally impaired by his headaches, which were apparently treatable with over-the-counter medication, that he could not engage in any substantial gainful activity. As for Plaintiff's eye pain and infections, the record is clear that those were two isolated incidents, which were quickly treated, and there are no lingering effects from those problems that would interfere with Plaintiff's ability to work. (Tr. 279-80, 291-92).

Next, the only mention of gastroenteritis in the record that Plaintiff cites to is a 2002 incident that significantly precedes his May 2010 disability onset date. *See Franzen v. Astrue*, 555 F.Supp.2d 720, 735 n.105 (W.D. Tex. 2008) (finding irrelevant medical records from three

years before the plaintiff protectively filed for benefits).  As to Plaintiff's complaints of shortness

of breath, he chiefly relies on a 2006 doctor's report that is not within the relevant timeframe.

(Doc. 15-1 at 13).  While there are other scattered references to shortness of breath during the

relevant time period from 2010 forward, (Tr. 299, 325, 343, 355), x-rays revealed that Plaintiff's

lungs were clear, there was no sign of disease, and the incidents often resolved on their own.  (Tr.

347, 355-56).  Plaintiff was noted to have no problems breathing at other times.  (T. 311, 360,

374).  Accordingly, the ALJ's failure to find that ailment to be severe was harmless error.

*Taylor*, 706 F.3d at 603.

Plaintiff also complains of the ALJ's failure to find his hyperlipidemia to be a severe

impairment.  However, he does not explain how his elevated cholesterol level caused him to be

unable to engage in substantial gainful activity in the manner assessed by the ALJ.  Finally,

Plaintiff's instances of arm numbness within the relevant time frame are infrequent (Tr. 325), and

during his consultative examination, Plaintiff's grip strength and fine finger movement were

normal.  (Tr. 327).   Plaintiff stated during that exam that he could do light cleaning, cook, shop,

write, button clothes, hold a coffee cup, and sweep, (Tr. 326), which is inconsistent with a claim

of severe arm numbness under the *Stone* standard.  In sum, the ALJ's failure to find these various

impairments to be severe is harmless and does not warrant reversal.  *Taylor*, 706 F.3d at 603.

## 2.  *Whether the ALJ erred by not considering the section 416.927 factors before declining to give controlling weight to the opinion of Plaintiff's treating doctors*

Next, Plaintiff urges that the ALJ erred by not adequately considering and addressing the

2007 medical opinion of Dr. Daniel Metzger and the 2009 statement of Dr. Richard Andrews,

both of whom opined that Plaintiff was disabled.  (Doc. 15-1 at 15-20); *see also* Doc. 19 at 5-7

(Plaintiff's reply brief, reiterating arguments).  Defendant responds that these two opinions were part of the record from a previous period in which the Commissioner found that Plaintiff was not disabled.  (Doc. 17-1 at 16-17).  Moreover, Defendant asserts that the Commissioner was not required to give the conclusory medical opinions controlling weight because the decision about whether Plaintiff is disabled is an issue reserved to the Commissioner.  *Id.* at 17.  Finally, Defendant urges that the conclusory medical opinions are inconsistent with the other medical evidence of record.  *Id.* at 17-20.

As noted by Defendant, the 2007 and 2009 disability statements were part of the record from a different period in which the Commissioner determined that Plaintiff was not disabled. (Tr. 67-68).  Plaintiff had applied for benefits in March 2006, and the ALJ found that he was not disabled at any time from then through the date of the ALJ's decision in June 2009.  *Id.*  The ALJ specifically rejected Dr. Metzger's October 2007 disability statement as the doctor did not explain the type of clinical and laboratory abnormalities upon which he had relied.  (Tr. 65). Likewise, Dr. Andrews's June 2009 statement was not accompanied by supporting medical evidence.  (Tr. 260).  Both the 2007 and 2009 statements were conclusory statements as to Plaintiff's disability, which is a decision reserved for the Commissioner because it is an case-dispositive finding.  20 C.F.R. § 416.927(d)(1); *see* SSR 96-5p, 1996 WL 374183 (Opinions on issues reserved for the Commissioner "even when offered by a treating source, . . . can never be entitled to controlling weight or be given special significance.").  Accordingly, the ALJ did not err by not considering the section 416.927 factors before declining to give controlling weight to the opinions of Dr. Metzger and Dr. Andrews.

### 3.  Whether the RFC is based on substantial evidence

Plaintiff argues that the ALJ formulated the RFC based on his own medical expertise instead of relying on medical expert evidence.  (Doc. 15-1 at 21).  By doing so, Plaintiff argues that the ALJ "succumbed to the temptation to play doctor," when the case law is clear that the RFC cannot be based on raw evidence and the ALJ's lay opinion about such evidence.  *Id.* Plaintiff asserts that he suffers from anxiety disorder, but the RFC does not contain any corresponding limitations.  *Id.*

Defendant responds that the final responsibility for determining a claimant's RFC is the ALJ's although the ALJ will consider opinions from acceptable medical sources on such issues as a claimant's limitations in making this assessment.  (Doc. 17-1 at 22-24).  Plaintiff replies that the ALJ rejected the state consultant's medical opinion as well as the statements of Plaintiff's treating doctors, no medical expert testified at the hearing, and the file contains no other medical expert evidence that the RFC could possibly be based on.  (Doc. 19 at 8).  Thus, Plaintiff argues that the only possible source of the RFC was the ALJ himself.  *Id.*

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  RFC refers to the most that a claimant is able to do despite his physical and mental limitations.  20 C.F.R. § 416.945(a).  The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work.  20 C.F.R. § 416.920(a)(4).  In assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8p; 20 C.F.R. § 416.923.  "[T]he final responsibility for

10

deciding [a claimant's RFC] is reserved for the Commissioner."  20 C.F.R. § 416.927(d)(1).

In *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), the ALJ ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion.  *Id.*  The appellate court noted that the claimant's record contained a vast amount of evidence establishing that the claimant had a back problem, but did not clearly establish what effect that condition had on his ability to work.  *Id.*  The court thus remanded with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work.  *Id.* at 557-58.  The court rejected the Commissioner's attempt to argue that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how 'small'" on his ability to work, absent a report from a qualified medical expert. *Id.* at 558 n.27.

As an initial matter, the ALJ properly ignored the disability opinions of Dr. Metzger and Dr. Andrews for the reasons described above.  Additionally, the ALJ disagreed with the state agency consultant's medical opinion only insofar as the ALJ found that Plaintiff could do somewhat <u>less</u> than the full range of light work that the consultant had opined.  (Tr. 16).  In determining Plaintiff's RFC, the ALJ noted that the medical evidence revealed no significant deterioration in his condition since he had last been adjudicated not disabled.  (Tr. 17). Additionally, the ALJ accurately observed that although Plaintiff had alleged osteoarthritis in his back and knees, no current treatment records for that condition were in evidence.  *Id.*  Indeed, at a July 2010 exam, Plaintiff walked with a slow but normal gait, was able to squat and stand up albeit with difficulty, and he had normal range of motion in his lower extremities, a negative

11

straight leg raise test, and no tenderness in his spine.  *Id.*  The ALJ correctly noted that Plaintiff's x-rays revealed relatively mild findings, and Plaintiff testified that he took only ibuprofen for pain.  *Id.*

The ALJ further stated that while Plaintiff had reported some numbness and tingling in his hands and feet, it did not affect his fine motor movements.  *Id.*  This is consistent with the state agency doctor's finding that Plaintiff's grip strength and fine finger movement were normal as well as Plaintiff's reports that he could do housework, cook, write, button clothes, and hold a coffee cup.  (Tr. 326-27).  As for Plaintiff's heart problems, the ALJ pointed out that one treating source characterized Plaintiff's history as "questionable coronary artery disease," and a chest-ray revealed only very mild cardiomegaly correlating to mild congestive heart failure.  *Id.*  The ALJ also noted that Plaintiff's allegation of disability was inconsistent with his testimony that he could (1) drive, (2) do daily housework, (3) maintain his personal hygiene, (4) lift 15 pounds, (5) cook, (6) sweep, and (7) care for his three sons who lived with him.  (Tr. 18).

Based on the evidence he cited, the ALJ properly determined that Plaintiff could perform the demands of a limited range of light work as set forth in the RFC.  (Tr. 16) (holding that Plaintiff could lift 15 pounds occasionally and ten pounds frequently; sit, stand, and walk for six, four, and two hours respectively; use his upper extremities; climb; and occasionally balance, stoop, kneel, and crawl). Finally, as previously noted, the references in the record to Plaintiff's anxiety were scarce, and he neither underwent mental health treatment nor took medication for that condition.  Thus, Plaintiff cannot demonstrate that the outcome of his case would have been different if the ALJ had included that non-severe impairment in his RFC.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not

required," and a court "will not vacate a judgment unless the substantial rights of a party are affected."). Accordingly, reversal is not warranted on this ground.

**4.  *Whether the ALJ erred by not ordering a consultative examination based on Plaintiff's mental condition***

Plaintiff next contends that the ALJ should have ordered a consultative examination based on his anxiety disorder because the extent of Plaintiff's anxiety is not clear from the medical records.  (Doc. 15-1 at 21-22).  Plaintiff maintains that the record at least raises a suspicion that his anxiety causes him nonexertional limitations.  *Id.* at 22; *see also* Doc. 19 at 9 (Plaintiff's reply brief, reiterating arguments).

Defendant responds that Plaintiff never claimed in the administrative proceedings that he had any mental impairment, and he provided no basis upon which to argue that the ALJ should have further developed the evidence in that regard.  (Doc. 17-1 at 24).  Defendant contends that a consultative examination is appropriate only when the evidence is insufficient to support the ALJ's decision, which is not the case here.  *Id.*

An ALJ must obtain a consultative examination if additional information is needed to render a decision.  *See* 20 C.F.R. § 416.919a(b) (stating that the Commissioner may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on a claim). The decision whether to order a consultative examination is within the ALJ's discretion.  *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).  As noted by Defendant, Plaintiff's attorney below did not ask the ALJ to order a consultative examination or even specifically allege that Plaintiff had a mental impairment.  Plaintiff provided no specific evidence that he had any mental problems prior to the

13

ALJ's decision.  Moreover, as discussed above, the references in the medical record to Plaintiff's

anxiety are scarce, and he neither sought mental health treatment nor took any mental health

medication.  *See* 20 C.F.R. § 416.929(c)(3)(iv), (v) (providing that the Commissioner can

consider medications that a claimant takes to alleviate his symptoms as well as treatment, other

than medication, that the claimant has received for his symptoms); *Brock v. Chater*, 84 F.3d 726,

728 (5th Cir. 1996) (providing that, in regard to non-exertional impairments, a consultative

"evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise a

suspicion of [one].").  Plaintiff failed to offer evidence indicating that he had a mental

impairment that warranted further development of the record. Accordingly, the ALJ had no

reason to obtain a consultative exam and had sufficient evidence to decide Plaintiff's case.  *See*

20 C.F.R. § 416.919a(b).  Moreover, the minimal references to Plaintiff's anxiety indicate that

any error by the ALJ was harmless.  *Mays*, 837 F.2d at 1364.

**5.  *Whether the ALJ erred in failing to apply the Grid Rules to determine that Plaintiff is disabled***

Plaintiff contends that at step 5, the ALJ should have found him disabled using Grid Rule

201.09.  (Doc. 15-1 at 22).  Plaintiff claims that he qualified for the application of that Rule

because (1) he was "closely approaching advanced age" at the time of the administrative hearing

since he was 50; (2) he had a limited education as he completed only the tenth grade; (3) he had a

previous work history of unskilled work as a janitor; and (4) he was limited to sedentary work as

testified to by the VE at his hearing.  *Id.* at 23-25.  Plaintiff maintains that the ALJ's

categorization of his RFC as allowing a restricted range of light work is not controlling as to

whether Grid Rule 201.09 applies; rather it is the VE's determination of what jobs a person with

a given RFC can do that governs because VE testimony must be used to support a step 5 finding. *Id.* at 25-26, 31.  Plaintiff asserts that Defendant must apply Grid Rule 201.09 because non-exertional factors played no significant role in determining his RFC.  *Id.* at 29-30.

Defendant responds that the ALJ recognized that Plaintiff had limitations which precluded application of the Grids at the light level, but that he had abilities which also precluded application of the Grids at the sedentary level; thus, the ALJ could use the Grids only as a framework for his decision.  (Doc. 17-1 at 26).  Defendant therefore argues that the ALJ properly obtained the assistance of a VE to determine the existence of available jobs.  *Id.*  Defendant explains that the ALJ considers a claimant's RFC in terms of the regulatory criteria when reviewing the Grids.  *Id.* at 28.  Thus, the VE's testimony that Plaintiff could do particular sedentary jobs based on the ALJ's RFC does not influence which Grid rule the ALJ applies.  *Id.* Defendant maintains that once the ALJ determines that he needs vocational assistance, he may consult a VE whose task is merely to determine whether there are a significant number of jobs in the national economy that the claimant can perform.  *Id.*  Plaintiff replies that the VE's testimony shows that Plaintiff is limited to sedentary work, and the ALJ had no basis for finding that Plaintiff can perform a restricted range of light work. (Doc. 19 at 10, 12).

Social Security Ruling 83-14 "directs adjudicators to first ascertain whether the grids direct a finding of disability based on the claimant's strength (exertional) limitations alone.  If so, the claimant's eligibility [is] established."  *Allsbury v. Barnhart*, 460 F.Supp.2d 717, 722 (E.D. Tex. 2006) (quoting SSR 83-14 (1983), 1983 WL 31254, at *3).  The Commissioner thus first determines a claimant's RFC and then attempts to locate his specific vocational profile on the Grids.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00 (c-d).  If the claimant's specific profile is

not listed in the Grids, a conclusion of "disabled" or "not disabled" cannot be made at that stage. *Id.* at (d).  Thus, a claimant's ability to work where his RFC falls somewhere between the sedentary and light level cannot be determined using the Grids and instead "is decided on the basis of the principles and definitions in the regulations."  *Id.*  The ALJ must then rely on expert vocational testimony or other similar evidence to establish that jobs exist for such an individual. *Fraga*, 810 F.2d at 1304; *see also* SSR 83-12 at *2 (where a claimant's exertional RFC does not coincide with the definition of any one of the ranges of work defined in the regulations, the occupational base is affected. The Commissioner thus must assess the extent of any erosion of the occupational base and, where the extent is not clear, the adjudicator will need to consult a vocational resource, including a VE in more complex cases.).

As is apparent from the law described above, a claimant's RFC and placement on the Grids, *vel non*, is within the Commissioner's purview.  *Allsbury*, 460 F.Supp.2d at 722; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00 (c-d).  The VE does not determine whether the claimant qualifies for application of the Grids, and Plaintiff's argument to that effect fails.  Once the ALJ assessed Plaintiff's RFC and ruled that he did not fit within a particular Grid rule, the VE's task was to determine whether there were sufficient jobs available that Plaintiff could perform.  The fact that the VE gave as examples only sedentary jobs is of no particular relevance because the VE's responsibility was simply to assess "the sufficiency of the remaining occupational base to support a conclusion as to disability."  SSR 83-12 at *2.  Using the Grids as a framework together with the VE's testimony, the ALJ concluded that a sufficient number of jobs existed in the national economy that Plaintiff could perform.  (Tr. 18).  Substantial evidence supports that decision.  *Greenspan*, 38 F.3d at 236.

16

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 15) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 17) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on June 19, 2013.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

17